**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHELBY DOREY, as Personal Representative for the ESTATE OF ANNABELLE L. BLACK, deceased

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 1:18-cv-35

HON.

**COMPLAINT**

Robert J. Buchanan (P42006)
BUCHANAN & BUCHANAN, PLC
171 Monroe Avenue NW, Suite 750
Grand Rapids, MI 49503
(616) 458-2464
rjb@BuchananFirm.com
Attorneys for Plaintiff

Andrew B. Birge
ACTING U.S. ATTORNEY
Ryan D. Cobb, Assistant U.S. Attorney
PO Box 208
Grand Rapids, MI 49503
(616) 456-2404
Ryan.cobb@usdoj.gov
Attorneys for Defendant

Plaintiff, Shelby Dorey, as Personal Representative for the Estate of Annabelle L. Black, through her attorneys, Buchanan & Buchanan PLC, states:

## NATURE OF THE CASE

1. This medical negligence claim concerns a physician assistant mismanaging a 14-month-old girl for respiratory distress, and denying or withholding immediate medical care.

2. On January 8, 2016 physician assistant Marguerite B. Sowers PA-C saw the toddler for fever, *"barking"* and *"croupy"* cough, noisy breathing (stridor), suprasternal

BUCHANAN PLC COUNSEL BUCHANAN LITIGATION

retractions[1] and feeling *"tired all the time."* The child had clear signs and symptoms of respiratory distress.

3. Ms. Sowers denied medical care that would prevent injury to the toddler. Instead of providing appropriate care or immediately sending the girl to a hospital emergency department, Ms. Sowers instructed the mother to take the child home, denying care.

4. At home, the child suddenly stopped breathing and went limp. Medical rescue teams resuscitated the girl and rushed her to the hospital, where she was connected to a machine that mechanically-breathed for her. Unfortunately, permanent-cognitively-incapacitating brain damage had already happened. The medical team kept her body alive for five days, until she died from the hypoxic brain damage.

## JURISDICTION AND VENUE

5. The amount in controversy exceeds $75,000, excluding costs, interest, and attorney fees.

6. Plaintiff properly presented an Administrative Tort Claim ("Tort Claim") for medical negligence to the United States Department of Health and Human Services under 28 USC §2675(a). **Exhibit 1**. The federal agency failed to respond to the claim within the six month-statute period, and by law the claim was deemed denied on January 8, 2018.

7. Under 28 USC §1346(b) and §2675, a Tort Claim administratively denied may be presented to a United States District Court for resolution.

8. The cause of action pled in this *COMPLAINT* is the same one contained in the Tort Claim.

BUCHANAN PLC COUNSEL
BUCHANAN LITIGATION

[1] Suprasternal retraction is abnormal breathing where the child uses chest and neck muscles (not usually needed) to get air into the lungs. The child has to work too hard to breathe and is in danger.

9. Defendant has waived governmental immunity and consented to this lawsuit in the FEDERAL TORT CLAIMS ACT, 28 USC §1346(b). This Court has jurisdiction over Defendant under 28 USC §1346(b).

10. Venue is proper in the Western District of Michigan because all events complained of took place in Greenville, Michigan.

## THE PARTIES

### PLAINTIFF

11. Annabelle L. Black ("**Annabelle**"), the patient, was a 14-month-old toddler and a resident of Montcalm County, Michigan in January 2016.

12. Shelby Dorey is Annabelle's mother, and duly appointed Personal Representative for the Estate of Annabelle L. Black. In this action, Ms. Dorey acts in her representative capacity as the plaintiff ("**Plaintiff**" or "**Shelby**").

13. The photograph below shows Annabelle, before her death:



14. In this lawsuit Plaintiff pursues all claims under the FEDERAL TORT CLAIMS ACT (28 USC §1346 (b)).

BUCHANAN PLC COUNSEL BUCHANAN LITIGATION

**DEFENDANT, UNITED STATES OF AMERICA**

**(I.E., CHERRY STREET SERVICES, INC. AND MARGUERITE B. SOWERS PA-C)**

15. The US Department of Health and Human Services is a federal agency of Defendant, the United States of America.

16. Cherry Street Services, Inc. is a federally-qualified health center of Defendant located at 1003 North Lafayette, Greenville, Michigan.

17. Marguerite B. Sowers PA-C is a licensed physician assistant, and was an employee of Cherry Street Services, Inc. in January 2016.

18. In this *COMPLAINT* "**Defendant**" refers to the United States of America, and its agents the US Department of Health and Human Services, Cherry Street Services, Inc., and Ms. Sowers.

19. Defendant is subject to the jurisdiction of this Court.

20. A health provider-patient relationship existed between Annabelle and Defendant's agents, Cherry Street Services, Inc. and Ms. Sowers, in January 2016.

21. Ms. Sowers was an agent (actual, apparent, ostensible, or by estoppel) of Defendant in January 2016.

22. Ms. Sowers acted within the scope of her employment or agency (actual, apparent, ostensible, or by estoppel) with Defendant when she cared for Annabelle in January 2016.

**FACTUAL ALLEGATIONS**

23. In early January 2016, Annabelle had a cough, congestion, and fever for over five days.

BUCHANAN PLC COUNSEL BUCHANAN LITIGATION

**THURSDAY, JANUARY 7, 2016: MOM TOOK SICK TODDLER TO A WALK-IN FAMILY MEDICINE CLINIC**

24. On January 7, 2016, Shelby took Annabelle to a walk-in family medicine clinic in Greenville. An evaluation revealed fast heart and breathing rates, a fever of 100.3° F, and a normal blood-oxygen level of 100%.

25. The clinic gave a diagnosis of *"upper respiratory infection – likely virus,"* instructed the mother to *"follow up with [primary care provider] for recheck in 1 week or before if worsening,"* and sent the girl home.

**FRIDAY, JANUARY 8, 2016: THE TODDLER WAS SICKER AND WENT TO CHERRY HEALTH – GREENVILLE WITH RESPIRATORY DISTRESS. PHYSICIAN ASSISTANT SOWERS WITHHELD APPROPRIATE EVALUATION AND DENIED THE GIRL IMMEDIATE MEDICAL CARE**

26. The next morning, on Friday, January 8, 2016, Annabelle's fever increased to 103.8° F and *"she is tired all the time."* Shelby drove the toddler to Cherry Health Greenville for an evaluation. They arrived at 10:45 am.

27. Physician assistant Marguerite B. Sowers PA-C evaluated Annabelle.

28. Ms. Sowers found the toddler *"is really congested"* and *"is tired all the time."* Heart and breathing rates were very fast.

29. Below (with portions highlighted in yellow by us for visibility) is a part of the January 8, 2016 office note:

> She has had a fever and runny nose, she is really congested. She is tired all the time. She had tylenol and advil this morning. Yesterday she was seen at the walk in clinic and her ears were fine. Later that day she started pulling at her ears.

30. Ms. Sowers found the toddler in respiratory distress: breathing was noisy ("***stridor***" - a sign of narrowed airways), and abnormal because she was using chest and neck



BUCHANAN LITIGATION BUCHANAN PLC COUNSEL

muscles (not usually needed) to get air into the lungs (***"suprasternal retractions"***). She had a *"croupy"* and *"barking"* cough.

31. Below (with portions highlighted in yellow by us for visibility) is more of the office note:

| | | |
|---|---|---|
| Nasopharynx | Normal | Nares - Right: Normal, Left: Normal. Lips/teeth/gums - Normal. Palate & uvula - Normal. Tonsils - Normal. Oropharynx - Normal. |
| Respiratory | * | Auscultation - Location: neck, Findings: stridor. Cough - croupy. Effort - suprasternal retractions. |

32. After listening to the chest with a stethoscope, Ms. Sowers talked to Shelby about Annabelle's breathing problems. She talked about getting a radiology study, but didn't get one.

33. ***Ms. Sowers withheld appropriate medical evaluation and testing (e.g., measuring blood-oxygen level, getting a chest x-ray).***

34. Ms. Sowers told Shelby to give steroid medication to her daughter for five days, and sent the prescription electronically to the pharmacy. Ms. Sowers sent them home by 12:02 pm.

35. ***By sending the girl home instead of to a hospital emergency department, Ms. Sowers denied Annabelle proper care and observation that would have prevented harm.***

**UNTREATED, THE RESPIRATORY DISTRESS WORSENED, AND AT HOME THE GIRL SUDDENLY STOPPED BREATHING**

36. That afternoon about 3:35 pm, Anabelle's dad, Zachary, carried the girl to put her in a pack and play. Suddenly, Annabelle stopped breathing, went limp, and no longer responded. Zachary lowered her to the floor and immediately started CPR. Shelby called 911 for medical help, and the emergency operator gave resuscitation instructions.

37. EMS arrived at the home and took over at 3:46 pm. Paramedics used a bag-valve-mask to manually force air into Annabelle's lungs, and continued chest compressions to keep the

BUCHANAN PLC COUNSEL
BUCHANAN LITIGATION

heart circulating blood. An ambulance rushed the girl to Spectrum Health United Hospital in Greenville.

38. The emergency department team restored Annabelle's breathing and heartbeat. They gave medication to increase a critically-low blood pressure and connected a ventilator to mechanically breathe for the girl.

39. Annabelle never moved or responded.

40. After the emergency team stabilized the girl, an ambulance transported her to DeVos Children's Hospital in Grand Rapids that afternoon.

**ANNABELLE HAD SUFFERED PERMANENT-COGNITIVELY-INCAPACITATING BRAIN DAMAGE, AND FIVE DAYS LATER SHE DIED AT DEVOS CHILDREN'S HOSPITAL FROM THE INJURIES**

41. Annabelle's medical condition deteriorated at DeVos Children's Hospital. By 2:00 am on January 9, the medical team observed non-stop seizures.

42. A January 11 MRI brain scan found *"profound anoxic brain injury,"* and the brain swelling outside the skull, down into the brain stem (herniation). The intensive care team warned the family that if Annabelle survived the brain injuries, she would be profoundly and severely impaired forever.

43. The medical team limited treatment to "*comfort care*" because there was no hope for recovery.

44. On January 13 Annabelle died from her brain injuries.

45. An autopsy by the Kent County Medical Examiner found the cause of death was catastrophic brain damage because of the respiratory arrest of January 8 (*"hypoxic encephalopathy from cardiorespiratory arrest"*).

46. The *CERTIFICATE OF DEATH* certified the autopsy findings.

BUCHANAN PLC COUNSEL BUCHANAN LITIGATION

**MEDICAL NEGLIGENCE**

**COUNT I**

47. Plaintiff restates and incorporates by reference the allegations in paragraphs 1 through 46 above.

**VICARIOUS LIABILITY FOR MEDICAL NEGLIGENCE**

48. Defendant was responsible (i.e., directly and vicariously liable) for Ms. Sowers and Cherry Street Services, Inc. when they negligently cared for Annabelle.

**DUTIES OWED**

49. Defendant owed a duty to Annabelle to refrain from acts of negligence or carelessness by its healthcare providers.

50. Ms. Sowers, Cherry Street Services, Inc., and their principal – Defendant, owed a duty to Annabelle to render, coordinate, and supervise medical care in a careful and prudent manner consistent with the applicable standard of practice for physician assistants.

51. Ms. Sowers, Cherry Street Services, Inc., and their principal – Defendant, owed a duty to Annabelle to provide her with the standard of practice for physician assistants. The applicable standard of practice in 2016 entailed, among other things, those described in Paragraphs 52 to 55 below.

52. **Never Needlessly Endanger a Patient**. A physician assistant must do all he or she reasonably can to protect a patient's health and safety, and must never expose a patient to foreseeable or avoidable injury. Patient safety comes first.

53. **Properly Diagnose Potential Emergency or Life-Threatening Condition**. A physician assistant caring for a patient who presents with or develops a medically-significant

BUCHANAN PLC COUNSEL
BUCHANAN LITIGATION

sign or symptom must timely and appropriately evaluate, diagnose, and treat, or seek treatment for, a potential emergency or life-threatening condition such as respiratory distress in a 14-month-old child.

54. **Immediately Respond to a Medically-Significant Sign or Symptom**. A physician assistant must timely recognize and properly treat, or seek treatment for, a medically-significant sign or symptom, including respiratory distress in a 14-month-old child (e.g., stridor, *"barking"* and *"croupy"* cough, suprasternal retractions, fast respiratory rate).

55. **Take Other Actions**. A physician assistant must timely take all other appropriate actions required by the standard of practice, care, or management, and not do things that violate the standard.

**BREACH OF DUTIES**

56. In January 2016, Ms. Sowers, Cherry Street Services, Inc., and their principal - Defendant, breached the applicable standard of practice owed to Annabelle. The breaches included, but are not limited to, those described in Paragraphs 57 to 60 below.

57. **Needlessly Endangering Annabelle**. Ms. Sowers needlessly endangered 14-month-old Annabelle. For instance, Ms. Sowers violated patient safety. She did not properly respond to Annabelle's medically-significant signs and symptoms of respiratory distress (e.g., stridor, suprasternal retractions, fast respiratory rate, *"barking"* and *"croupy"* cough, excessive sleepiness). She withheld proper care (e.g., measuring the blood-oxygen level, getting a chest x-ray) and close monitoring on January 8, 2016. By not sending the toddler immediately to a hospital emergency department, Ms. Sowers denied Annabelle necessary care.

58. **Not Properly Diagnosing the Potential Emergency or Life-Threatening Condition**. For instance, Ms. Sowers did not properly evaluate Annabelle's condition. She

BUCHANAN PLC COUNSEL BUCHANAN LITIGATION

withheld measuring the blood-oxygen level or getting a chest x-ray. She did not properly respond to Annabelle's medically-significant signs and symptoms of respiratory distress (e.g., stridor, suprasternal retractions, fast respiratory rate, *"barking"* and *"croupy"* cough, excessive sleepiness). By not sending the toddler immediately to a hospital emergency department, Ms. Sowers denied Annabelle necessary care.

59. **Denying or Withholding Immediate Response to a Medically-Significant Sign or Symptom**. For instance, she did not properly respond to Annabelle's medically-significant signs and symptoms of respiratory distress (e.g., stridor, suprasternal retractions, fast respiratory rate, *"barking"* and *"croupy"* cough, excessive sleepiness). She withheld proper care (e.g., measuring the blood-oxygen level, getting a chest x-ray) and close monitoring on January 8, 2016. By not sending the toddler immediately to a hospital emergency department, Ms. Sowers denied Annabelle necessary care.

60. **Other Negligence**. Ms. Sowers failed to do other things required by the standard of practice, and did other things that violated the standard.

**AFFIDAVIT OF MERIT IN SUPPORT**

61. Plaintiff, under MCL §600.2912d, attached as **Exhibit 2** and incorporates the *AFFIDAVIT OF MERIT OF JAMES A. VAN RHEE PA-C* attesting to liability of Defendant, and to causation.

*62.* Plaintiff, pursuant to MCL 600.2912d, attaches as **Exhibit 3** and incorporates the *AFFIDAVIT OF MERIT BY MICHAEL R. CLARK MD* attesting to causation.

BUCHANAN PLC COUNSEL
BUCHANAN LITIGATION

**THE MANNER IN WHICH THE BREACHES WERE A PROXIMATE CAUSE OF THE INJURIES AND DAMAGES**

63. The negligent care and treatment of Annabelle Black by Marguerite B. Sowers PA-C and Cherry Street Services, Inc., caused her catastrophic injuries of January 2016, her permanently-impaired-cognitive capacity by January 8, 2016, and her resulting death on January 13, 2016.

64. Human life depends on a constant process of gas exchange in the lungs, by which the body is supplied with vital oxygen, and carbon dioxide is eliminated. The brain and heart require continuous oxygen and reduction of carbon dioxide. The cardiac and pulmonary systems provide the exchange of gases for all organs in the body. The heart pumps blood through the lungs where the gas exchange occurs. The blood then flows through the body, delivering vital oxygen to the cells of organs and tissues. Once the blood delivers oxygen and nutrients to cells, it returns to the heart and lungs repeating the cycle.

65. The heart and brain, in particular, require a constant supply of oxygen and reduction of carbon dioxide. Stridor, suprasternal retractions, and fast respiratory rate are medically-significant signs of respiratory distress, including airway restriction and impaired gas exchange. As less and less oxygen gets into the blood stream, the heart rate slows and eventually stops. Without prompt correction or medical intervention, profound brain injury occurs and the lack of sufficient oxygen for living tissue (hypoxia) causes brain damage and swelling, which is precisely what happened to Annabelle on January 8, 2016. The autopsy and the *CERTIFICATE OF DEATH* confirm causation.

BUCHANAN LITIGATION BUCHANAN PLC COUNSEL

66. The January 8, 2016 brain damage also caused permanently-impaired-cognitive capacity, rendering Annabelle permanently incapable of making independent responsible life decisions, or independently performing the activities of normal daily living.

67. If Ms. Sowers had appropriately responded to Annabelle's condition on January 8, 2016, the girl would have suffered no permanent injury. Ms. Sowers' medical negligence caused Annabelle's brain damage, and eventual and preventable death.

**HARMS AND LOSSES**

68. Plaintiff pursues in this action against Defendant every harm and loss (i.e., damage) recoverable under the law.

69. Because of Defendants' negligence, Annabelle, the Estate (including all persons who may be entitled to damages by law), and Plaintiff suffered damage, that include, without limitation:

a. Loss of Annabelle's future lost wages;

b. Loss of Annabelle's services;

c. Loss of Annabelle's society, companionship, love, affection, support, consortium, and comfort experienced by family members who have survived her;

d. Loss of life, pleasure, and enjoyment;

e. Physical pain and suffering of Annabelle while she was conscious;

f. Annabelle's mental anguish and emotional distress;

g. Annabelle's anxiety, fright, and shock;

h. Funeral and burial expenses incurred for Annabelle;

i. All damages surviving Annabelle's death under the Michigan Survivor Act (MCL 600.2921);

BUCHANAN LITIGATION BUCHANAN PLC COUNSEL



j. All damages properly recoverable under the Michigan Wrongful Death Act (MCL 600.2922, e.g., "*damages as the court or jury shall consider fair and equitable*" under all the circumstances); and

k. All other damages properly recoverable under Michigan law, or as considered fair or equitable.

**PRAYER FOR RELIEF**

ACCORDINGLY, Plaintiff respectfully requests that this Court:

(A) Enter a judgment against Defendant and in favor of Plaintiff in an amount determined to be full, fair, and reasonable compensation for the injuries and damages sustained by the Plaintiff, plus costs, interest, and attorney fee; and

(B) Order such other relief as the Court deems just and equitable.

BUCHANAN & BUCHANAN, PLC
Attorneys for Plaintiff

Date: January 9, 2018

BY: *s/Robert J. Buchanan*
Robert J. Buchanan (P42006)

BUSINESS ADDRESS & TELEPHONE NO.

171 Monroe Avenue NW, Suite 750
Grand Rapids, Michigan 49503
(616) 458-2464

BUCHANAN PLC BUCHANAN LITIGATION COUNSEL